EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN NÚÑEZ TOLEDO, acusado y apelante.

*Número:* CR-65-16      *Resuelto:* 27 de septiembre de 1965

*Eduardo Cuchí Coll,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El apelante fue sentenciado a cumplir 10 días de cárcel y la cancelación de su licencia para manejar vehículos de motor por el término de un año, después de haber sido convicto de infringir la Sec. 5-801 de la Ley de Vehículos y Tránsito de 1960, 9 L.P.R.A., sec. 1041 (Conducción de vehículos de motor bajo los efectos de bebidas embriagantes). Señala en este recurso la comisión de varios errores que en realidad envuelven una sola cuestión.

Al ser detenido por la infracción imputádale, el acusado accedió que se le tomara una muestra de orina. Las partes estipularon que se observó cumplidamente el procedimiento que dispone la ley para tomar, envasar y despachar dicha muestra.

El análisis químico de una de las tres partes en que se dividió la muestra, presentado por el fiscal como prueba de cargo, reveló un contenido de diecisiete centésimas del uno por ciento (.17%) por peso de alcohol. El análisis de la parte de la muestra entregada al acusado, hecho por un químico de su selección, reveló trece centésimas de uno por ciento (.13%) por peso de alcohol. Debido a la discrepancia en el resultado de ambos análisis el Tribunal ordenó, a solicitud de la defensa, que se analizara la tercera porción que se conserva con ese fin. Este análisis reveló un contenido de dos centésimas del uno por ciento (.02%) por peso de alcohol. [1]

---

[1] La Sec. 5-803, inciso (f) de la Ley de Vehículos y Tránsito, dispone:

"(f) Toda muestra de sangre u orina será dividida en tres partes: Una será entregada a la persona detenida, para que la envíe a analizar

El resultado del análisis químico de esta tercera parte de la muestra de orina, sirve de base a los planteamientos del apelante. ([2])

Conocidas son las disposiciones legales ([3]) al efecto de que la cantidad de alcohol existente en la sangre del acusado al tiempo de cometerse la infracción según surja tal cantidad del análisis químico de su sangre, orina o aliento, constituye base para las siguientes presunciones: (a) que el acusado no estaba bajo los efectos de bebidas embriagantes si al momento del análisis en la sangre del acusado había cinco (5) centésimas de uno (1) por ciento, o menos por peso de alcohol; (b) que estaba bajo los efectos de bebidas embriagantes al tiempo de cometerse la infracción si en la sangre del acusado había quince (15) centésimas de uno (1) por ciento, o más, por peso de alcohol, y (c) si en la sangre del acusado había más de cinco (5) centésimas de uno (1) por ciento, pero menos de quince (15) centésimas de uno (1) por ciento, por peso de alcohol, ello no constituye base para presumir que el acusado estaba o no bajo los efectos de bebidas embriagantes, pero dicha prueba puede ser considerada conjunta-

---

a un químico de su selección, si así lo deseare, y las otras dos serán reservadas para el uso del Departamento de Salud, una de ellas con el propósito de ser usada en el análisis químico requerido por este artículo y la otra, se conservará para ser analizada únicamente por instrucciones del tribunal, en caso de que existiere discrepancia entre el análisis oficial y el análisis hecho privadamente por instrucciones del acusado." (9 L.P.R.A. sec. 1043, inciso "f".)

([2]) El apelante señala la comisión de los siguientes errores:

"(a) El Tribunal sentenciador erró al concluir que el acusado apelante violó la Sección 5-801 de la Ley de Tránsito de Puerto Rico.

(b) El Tribunal sentenciador erró al aceptar prueba sobre la alegada embriaguez del acusado, cuando el análisis final de comprobación de orina arrojó un resultado de menos de cinco centésimas de 1% por peso de alcohol.

(c) El Tribunal sentenciador erró al condenar al acusado a la pena de diez días de cárcel.

(d) El Tribunal sentenciador erró al concluir que el acusado Juan Núñez Toledo conducía un vehículo de motor por una vía pública de Puerto Rico bajo los efectos de bebidas embriagantes."

([3]) Sec. 5-801 de la Ley de Vehículos y Tránsito.

mente con otra evidencia competente para determinar la culpabilidad o inocencia del acusado.

■ Ahora bien en los casos en que el análisis químico demuestra que en la sangre del acusado hay más de cinco (5) centésimas de uno (1) por ciento, por peso de alcohol, el Pueblo puede presentar cualquier otra evidencia competente sobre si el acusado estaba o no bajo los efectos de bebidas embriagantes al tiempo de cometerse la alegada infracción. (Inciso 4(b) de la Sec. 5-801 de la Ley de Vehículos y Tránsito.) (4) Sólo cuando el contenido de alcohol en la sangre del acusado es de cinco centésimas de uno por ciento (.05%) o menos, por peso, es que se presume concluyentemente que dicho acusado no estaba bajo los efectos de bebidas embriagantes al incurrir en la infracción: *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 392, 400 (1962).

El apelante parece descansar en esta presunción a base del resultado del análisis de comprobación ordenado por el tribunal a petición suya.

■ Tendría razón si el peso probatorio del resultado de ese análisis de comprobación obligara al juez sentenciador a basar su fallo en el mismo, y en su consecuencia a ignorar tanto el análisis presentado por el Fiscal como el presentado por la defensa, así como la prueba testifical. Sin embargo, dadas las circunstancias concurrentes, el resultado del análisis de comprobación no puede ni debe considerarse como determinante de la inocencia del acusado en este caso.

■ Sobre la gran discrepancia entre los resultados de los análisis químicos—el oficial y el hecho por un químico privado de la selección del acusado—y el análisis de comprobación, la señora Haydée Fernández, química del Departamento de Salud, declaró que ella personalmente hizo el

---

(4) En este caso el Pueblo presentó, además del análisis químico, prueba adicional, consistente en el testimonio del agente del orden público Jorge Luis Soler, quien declaró que el acusado hablaba incoherentemente, expedía fuerte olor a licor y andaba "dando tumbos".

análisis oficial (.17% por peso de alcohol) y nueve meses después el de comprobación. Explicó que la mayor parte de los envases guardados pierden su contenido de alcohol, debido a la evaporación, a razón de dos centésimas de uno por ciento (.02%) por mes. Agregó que el mínimo que pudo haber perdido la parte que fue objeto de comprobación no podía determinarse sin calcular ciertas "líneas de presión". A preguntas de la defensa declaró que la evaporación del alcohol se debe a que los envases no vienen bien sellados y que la tapa del que contenía la muestra de comprobación del caso de autos no estaba bien enroscada.

Ante esta explicación razonable de la química del Departamento de Salud, no incurrió en error el Tribunal sentenciador al no considerar el resultado del análisis de comprobación, suficiente para establecer la base de la presunción de que el acusado no estaba bajo los efectos de bebidas embriagantes al momento de cometer la infracción imputádale.

*Se confirmará la sentencia apelada.*