EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FÉLIX CASTRO ROSARIO, acusado y apelante.

*Número:* CR-67-42    *Resuelto:* 8 de diciembre de 1967

*Pedro A. Otero Fernández* y *Octavio Malavé Torres,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue declarado culpable de conducir un vehículo de motor por la vía pública estando dicho apelante bajo los efectos de bebidas embriagantes. Fue sentenciado a la pena de 15 días de cárcel y se le suspendió la licencia de conductor por el término de un año.

En este recurso ataca la suficiencia de la prueba para sostener su convicción y la pena en sí por considerarla excesiva.

La prueba de cargo estableció que en 8 de octubre de 1966 los policías Marcos Andujar Pérez y Andrés Tolentino se encontraban en misión de patrulla en un vehículo no identificado como de la Policía, en cierto sector de la Urbanización

San José. A eso de la 1:20 de la madrugada, mientras se dirigían hacia la calle López Sicardó de la Urbanización Dos Pinos vieron una guagua *pick-up* que venía en dirección contraria e invadió el carril de ellos al tomar una curva. Decidieron seguirla a la distancia. La guagua *pick-up* iba a una velocidad entre 40 y 45 millas y tomaba las curvas irregularmente. La detuvieron y al pedirle la licencia a su conductor Félix Castro Rosario manifestó éste que no la tenía. Expedía olor a licor, lo arrestaron y le condujeron al cuartel y luego al Centro Médico de Barrio Obrero donde se le tomó una muestra de sangre. Luego se le condujo ante un magistrado y allí mostró su licencia de conductor. Dicho magistrado determinó causa probable y ordenó la radicación de una acusación por guiar en estado de embriaguez.

El policía Marcos Andujar Pérez declaró sobre estos extremos. En el examen directo declaró además que el acusado daba tumbos pero no una cosa que se estuviera cayendo; que aunque nunca había hablado con el acusado "no era muy claro como hablaba"; que mientras se conducía el procedimiento de investigación, el acusado observó una "conducta negativa a los requerimientos de la policía de la licencia"; que decía que no le hablaran duro, que no lo regañaran; que el acusado no dijo palabras obscenas.

En la repregunta y a preguntas del juez este policía declaró que en el cuartel el acusado se identificó como policía adscrito al Cuerpo de Investigación Criminal; que el acusado no conducía correctamente; que no daba "zig-zag" ni se tambaleaba; que para el testigo el acusado caminaba normalmente; que "no es que se estuviera cayendo", no daba tumbos, bajó las escaleras; era un segundo piso, bajaba y subía; que se le notaba un tufo. Las partes estipularon que el procedimiento seguido para tomar la muestra de sangre y el seguido por la química en el análisis de dicha sangre fue normal y conforme a la ley. También estipularon que el resul-

tado del análisis de la sangre arrojó un .21% de alcohol por peso.

Por la defensa declaró el químico Rafael Santiago Carmona. Dijo que el día 17 de octubre de 1966 le entregaron una muestra de sangre número 09715 y ese mismo día la analizó y encontró que tenía 0.13 de alcohol por peso; que el frasco que contenía la muestra estaba tapado pero no precintado y que se podía abrir desenroscándolo. Declaró además que la muestra que analizó no contenía agua; que hay factores que pueden alterar el contenido de alcohol en una muestra de sangre, entre ellos el que el frasco se deje destapado o fuera de la nevera; que las muestras que van a Sanidad las meten inmediatamente en nevera y no cree que haya pérdida, "no hay diferencia entre las dos que están allá"; que puede "haber pérdida en la que tenga el acusado, que la tenga fuera de nevera y aunque esté bien tapada hay pérdida". Declaró además que no puede explicar la diferencia entre el resultado de la muestra que él analizó y la que analizó la química del Departamento de Salud.

La versión del acusado, según su testimonio, es al efecto de que la policía lo detuvo llegando a la intersección de las calles Felipe Gutiérrez y Simón Madera; que el policía Tolentino lo mandó a bajar y luego le tiró dos puños; que lo condujeron al cuartel de la policía y allí entregó su licencia y su "carnet" de identificación; que le devolvieron éste mas no la licencia. Del cuartel lo llevaron al Dispensario del Barrio Obrero para tomarle la muestra de sangre y de allí a la Sala de Investigaciones. Declaró además que esa tarde él había estado en una investigación en la Parada 15, Calle Monserrate, en relación con una persona que había aparecido muerta dos semanas antes; que conversó con un compadre suyo quien resultó no conoce mucho del asunto; que más tarde se metió en un bar que está en la calle Monserrate, esquina Carmen donde se reúnen personas del bajo mundo y para justificar su presencia allí hizo uso de bebidas alco-

hólicas. "Yo me tomé", dice, "algunos cuatro tragos de wisky con soda." Luego de terminar sus averiguaciones se dirigió a su casa.

En el contrainterrogatorio declaró que no elevó querella contra el policía Tolentino.

El otro testigo de defensa, José Miguel Díaz Álamo, declaró sobre la reputación del acusado.

Al declarar culpable al acusado el Magistrado se expresó así:

"Hon. Juez:—

Póngase de pie el acusado. Por el resultado de la prueba y considerando todas las declaraciones vertidas, incluyendo la del buen amigo Díaz Álamo y dándole el valor probatorio que a nuestro juicio merece la declaración del policía Andújar, en otras palabras, no merece a nuestro juicio un valor ciento por ciento. Tengo la íntima convicción que ha querido soplar frío y caliente; pero en [sic] conjunto de la prueba y del resultado del análisis el Tribunal declara a usted culpable de Infracción al artículo, a la ley de vehículos y tránsito y no tiene la menor duda que usted estaba bajo los efectos de bebidas embriagantes ese día. No considero yo que un policía y ésto lo digo con toda valentía, no creo yo que el policía Andújar después de enterarse [que] usted era un policía si lo único que tuvo el mero tufo, hubiera insistido en llevarlo a presencia de un magistrado. Tenía que haber habido algo más que al policía Andújar se le olvidó o no quiso decir; pero hay un dato revelador y es el resultado del análisis que el Tribunal da completo crédito al análisis hecho por la química doña Gloria Circums que revela que tenía .21% de alcohol en la sangre. No es que no crea al químico Carmona; pero como el mismo químico admite eso se puede destapar fácilmente y es muy volátil y que se puede haber volatilizado." (T.E. págs. 47, 48.)

▪ El conjunto de la prueba establece la culpabilidad del acusado más allá de duda razonable. El resultado del análisis de la muestra de sangre tomada al acusado que arrojó un .21% de alcohol por peso fue admitido como prueba de cargo por estipulación de las partes. No se ataca ni el procedimiento seguido para la obtención de la muestra, ni el pro-

cedimiento seguido para su análisis y mucho menos el resultado del mismo. Ese hecho establece la presunción de que el acusado estaba bajo los efectos de bebidas embriagantes al tiempo de cometerse la infracción. Sec. 5-801(a)(3) de la Ley de Vehículos y Tránsito de Puerto Rico (9 L.P.R.A. sec. 1041). Esa presunción está fortalecida por otra prueba en el récord tal como la forma irregular de conducir el acusado su vehículo de motor, que el acusado "daba tumbos pero no una cosa que se estuviera cayendo", "no era muy claro como hablaba y que despedía olor a licor" además de su propia admisión de que poco después de las seis de la tarde entró a un bar donde se tomó algunos cuatro tragos de whisky con soda.

Por otra parte, en lo que respecta al resultado de la muestra de sangre analizada por el químico Rafael Santiago Carmona, nada hay en el récord que indique que esa muestra estaba, cuando la analizó dicho químico, en las mismas condiciones en que estaba cuando se la entregaron al acusado o que fuera conservada por éste en forma tal que el transcurso del tiempo no alterara el contenido de alcohol en la sangre.

La discrepancia entre los resultados de los dos análisis presentados en evidencia, no crea por sí duda razonable en cuanto al estado en que se encontraba el acusado, ni da base para su absolución. *Pueblo* v. *Núñez Toledo*, 92 D.P.R. 706 (1965).

■ Ahora bien, aun cuando la pena impuesta al acusado cae dentro de los límites señalados en la ley, consideramos, que dadas las circunstancias concurrentes, debe alterarse imponiendo al acusado $100.00 de multa o un día de cárcel por cada dólar que deje de satisfacer, no debiendo exceder la prisión subsidiaria de 90 días de cárcel.

*En ese sentido se modificará la sentencia apelada y así modificada será confirmada.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Belaval no intervinieron.